UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 07-10162-GAO

UNITED STATES OF AMERICA,

v.

EDDIE JONES,
Defendant.

OPINION AND ORDER
March 26, 2019

O'TOOLE, D.J.

After a jury trial, the petitioner, Eddie Jones, was convicted of four counts related to the transportation of girls and women across state lines to engage in prostitution. Jones now moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, arguing principally that trial counsel's advice regarding his sentencing exposure was constitutionally ineffective.

**I.     Background**

On May 16, 2007, a federal grand jury returned an indictment charging Eddie Jones and five others with conspiring to transport individuals in interstate commerce with intent that they engage in prostitution, in violation of 18 U.S.C. § 371 (Count 1). Jones was also charged with two counts of transporting a minor across state lines to engage in prostitution, in violation of 18 U.S.C. § 2423(a) (Counts 9 and 14), and one count of inducing travel to engage in prostitution, in violation of 18 U.S.C. § 2422(a) (Count 13). Four of his co-defendants pled guilty to various charges in the

indictment, but Jones and co-defendant Darryl Tavares proceeded to trial. On November 6, 2009, the jury found Jones guilty of Counts 1, 9, and 14, and acquitted him of Count 13.[1]

At sentencing, Judge Nancy Gertner found that Jones qualified as a career offender under the United States Sentencing Guidelines with a guideline range of 262 to 327 months imprisonment. She imposed a within-guidelines sentence of 300 months imprisonment. His convictions and sentence were subsequently affirmed by the First Circuit. United States v. Tavares, 705 F.3d 4, 12 (1st Cir. 2013).

Jones timely moved *pro se* to vacate his conviction and sentence under 28 U.S.C. § 2255 claiming ineffective assistance of counsel. This Court appointed counsel, who supplemented Jones's filings. An evidentiary hearing was held during which the parties presented evidence directed primarily at trial counsel's sentencing-related advice. Following the hearing, the parties filed further briefing.

## II. Claim of Ineffective Assistance of Counsel During Plea Negotiations

Under the Sixth Amendment, criminal defendants are "entitled to the effective assistance of competent counsel" during the plea bargaining process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Claims that counsel provided ineffective assistance during plea negotiations are reviewed using the two-part test of Strickland v. Washington, 466 U.S. 668 (1984), under which a defendant must show that counsel's performance fell below an "objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Lafler, 566 U.S. at 153. In the circumstances here, where the petitioner claims that allegedly ineffective advice led

---

[1] The jury also found Tavares guilty on four counts of the indictment. He was sentenced to 300 months incarceration.

him to reject a plea offer and instead proceed to trial, he must show that but for the ineffective advice of counsel, there is a

> reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 164.

Jones claims that the performance of his trial counsel, Elliot Weinstein, fell below an objective standard of reasonableness during plea negotiations because Weinstein significantly underestimated his sentencing exposure. Jones claims that Weinstein's inaccurate projection of the likely sentencing range led him to reject an offer to plead guilty to certain counts in exchange for a recommended term of incarceration of 10–12 years and to insist instead on going to trial because the sentence under the offered plea would not have been significantly different from the predicted range after trial. In other words, on the inaccurate advice, the sentence was not likely to be significantly different whether he pled or took his chances at trial.

There is no dispute that Weinstein failed to appreciate the defendant's likely status as a career offender under the Sentencing Guidelines and consequently did not accurately advise the defendant about his likely guidelines range. Shortly before trial, Weinstein sent a letter to Jones advising him about his sentencing exposure. He told Jones that the relevant statute provided for a sentence between a mandatory minimum of 5 and a maximum of 30 years imprisonment. He also advised Jones about his calculation of the applicable sentencing guidelines, stating "[m]y rough guideline calculation has you at offense level 28, criminal history VI; that is, after trial roughly 140-175 months. With acceptance of responsibility (that is only if you plead guilty), offense level goes down to level 26 (maybe 25), 120-150 months. I am not certain about these calculations but

they are pretty close." (Mot. to Suppl., Ex. A (dkt. no. 378-1).) However, Weinstein overlooked the effect of the defendant's two prior felony convictions for resisting arrest, which qualified him as a career offender.[2] See U.S. Sentencing Guidelines Manual § 4B1.1 (2010). As a career offender, his guideline range, as actually calculated after trial, was 262–327 months, a little more than double what Weinstein had advised Jones. (Sentencing Tr. 16, Nov. 22, 2010 (dkt. no. 303).)

For present purposes it can be assumed that Weinstein's misestimation of the likely guidelines range fell below the prevailing professional norm for counseling a client during plea negotiations. Despite having the benefit of that assumption, Jones has failed to demonstrate that but for counsel's error, the result of the proceeding would have been different. He has not shown that there was a reasonable probability either that a firm, favorable plea offer would have been presented to him by the prosecution or that any similarly favorable sentencing recommendation would have been accepted by the court. See Lafler, 566 U.S. at 164.

It is undisputed that no formal written offer to plead guilty in the form of a drafted plea agreement proposal was ever presented to Weinstein by the prosecutors. Such an offer would have had to have been authorized by the line prosecutors' supervisors, (see Tr. of Evid. Hr'g 89, 116–17, Mar. 22, 2018 (dkt. no. 438)), and there is no evidence that either of the prosecutors in this case, Leah Foley and George Vien, ever sought—much less obtained—such approval. Further, on the basis of the hearing evidence, I find as a fact that while there were likely some preliminary and informal discussions about Jones's pleading guilty, such preliminary communications never crystalized into even a concrete verbal offer by the government, *i.e.*, one with specific terms such as the counts to which Jones would plead guilty, the guideline range to be applied, any sentencing

---

[2] In January 2009, after Jones was charged but well before he went to trial, the First Circuit held in United States v. Almenas, 553 F.3d 27 (1st Cir.), cert denied, 556 U.S. 1251 (May 18, 2009), that resisting arrest under Massachusetts law is a crime of violence for the purposes of § 4B1.1.

4

arguments to be foregone, or the particular facts that Jones would admit. Cf. United States v. Merlino, 109 F. Supp. 3d 368, 376 (D. Mass. 2015) (analyzing existence of formal offer under general contract principles for purposes of counsel's duty to convey plea offers to clients under Missouri v. Frye, 566 U.S. 134 (2012)); United States v. Merlino, No. CRIM.A. 99-10098-RGS, 2014 WL 793987, at *4 (D. Mass. Feb. 28, 2014) (noting that a "majority of courts . . . have held that a formal plea offer must consist of something more than preliminary oral communications").

The hearing testimony of the two prosecutors was both consistent and credible on this point.

Foley testified that she had not offered Jones "any plea." (Tr. of Evid. Hr'g 98.) She considered Jones, along with Tavares, "by far the most culpable among all of the co-defendants." (Id. at 99; accord id. at 100.) She acknowledged that she engaged in some "preliminary and involved" negotiations with Weinstein, but never discussed "specific numbers" because Weinstein had indicated that Jones would be proceeding to trial. (Id. at 101–04, 109, 117–18, 121.) Foley's impression based upon her conversations with Weinstein was that Jones anticipated that the victim witnesses would either not testify against him or, in light of their involvement in prostitution, would not be believed by a jury.

Vien, who dealt more directly with Weinstein as the trial approached, similarly testified that he never offered Jones a plea deal that was specific to either the counts to be included or the sentence to be recommended. (Id. at 88–89 (did not recall offering a term of 10–12 years); id. at 89 (did not offer a term of 8 years during trial); id. at 95 (did not discuss numbers with Weinstein); id. at 96 (stating he "would not agree to recommend a particular sentence"); id. at 114 (did not recall negotiations about Jones pleading guilty to only certain counts and stating "absolutely" that "there is no way it would have ever been allowed"). Like Foley, he considered Jones and Tavares

5

"by far the most culpable" of the defendants. (Id. at 87–88.) Because of Jones's culpability, he told Weinstein that he "didn't want to make a deal with him or give him a break" and that Jones "would probably be best served just pleading open and arguing in front of Judge Gertner." (Id. at 88; accord id. at 95–96) With respect to plea negotiations, they were essentially "at an impasse" because Vien was unwilling "to offer any kind of reduced sentence" or conditional plea. (Id. at 88.)

Further, the defendant's claim that Weinstein informed him that the government had offered a deal in which Jones could plead guilty to a term of years or to certain counts is not specifically corroborated by his own counsel. Weinstein, who acknowledged having suffered some memory loss owing to an intervening course of medical treatment, remembered generally discussing plea negotiations with Jones. But in a pre-hearing affidavit, he averred that he did "not recall telling Mr. Jones there was a 10-12 plea deal on the table," nor a "discussion about pleading guilty to certain counts of the indictment." (Aff. of Elliot M. Weinstein ¶ 9 (dkt. no. 411).) At the hearing, he testified that he remembered one specific instance during trial in which he reported to Jones a term of years that Vien said he would recommend if Jones pled guilty, but he did not recall what the specified term of years was and, as described above, Vien denied that he ever told Weinstein that he would recommend a certain sentence in exchange for a guilty plea.[3]

I find on the evidence that Jones has failed to show that he was actually prejudiced as a result of any error by counsel in miscalculating the likely guidelines range and communicating that inaccurate advice to Jones. See Lafler, 566 U.S. at 164; Strickland, 466 U.S. at 694. At most, there

---

[3] Jones's post-hearing request to call his appellate counsel—already denied by this Court at the hearing—and to submit an affidavit from Tavares' trial counsel is denied as Jones had ample opportunity prior to the close of the evidentiary hearing to present his evidence in support of his petition. The § 2255 record, developed by the parties over four years through multiple amendments and submissions by Jones and an evidentiary hearing, is closed.

were preliminary and general oral communications about the possibility of a guilty plea made by prosecutors in the course of negotiations, but those communications were without the approval of their supervisors that would have been necessary before a formal offer could have been made. In the absence of any specific offer, Jones has not shown the outcome of the proceeding would likely have been different if he had received accurate advice about his sentencing exposure. See Lafler, 566 U.S. at 168 ("If no plea offer is made, . . . the issue raised here simply does not arise.")

Moreover, Jones has not shown as he must that, if a concrete offer had been made by the prosecutors, it would have been accepted by the court and a less severe sentence would have been imposed. See id. at 164. Rather, her remarks at sentencing make it at least uncertain whether even after a plea Judge Gertner would have imposed a different sentence more favorable to Jones. (See, e.g. Sentencing Tr. 17 ("I've been a criminal defense lawyer for 24 years before I became a judge. I participate both as a lawyer and a judge in a whole host of cases. This was one of the most disturbing cases that I had ever participated in."); id. ("The callousness with which Mr. Jones and Mr. Tavares dealt with these women was quite extraordinary, and you couldn't have found a more vulnerable group of women . . . ."); id. ("I'm sentencing you based on what this offense is, on your record, vis-a-vis women, on the way in which women were humiliated, and I'm sentencing you in part on what you just said a few moments ago [in the allocution]").) Jones has not carried his burden on this point either.

**III.     Other Claims**

Jones also advances other claims of ineffective assistance of counsel that were raised principally in his original *pro se* filing and that relate to trial preparation and sentencing.

Jones claims that counsel was ineffective for failing to properly prepare for trial because he did not investigate car records that could have shown that one victim drove her own car across

7

state lines to engage in prostitution. Any alleged failure to investigate the car records did not prejudice him. During cross-examination at trial, Weinstein pointed out inconsistencies in the victim's testimony, exposed to the jury a motive for her to be untruthful, and elicited the fact she owned a car and that she may have been in her own car during at least one of the interstate trips. It is unclear how records showing she was in her own car during the trips would have materially changed the evidence in Jones's favor, particularly because the jury was instructed that it was not necessary for them to find that the defendant personally transported the victim across state lines in order to find him guilty. (Jury Instrs. 6 (dkt. no. 213).)

Jones also claims counsel was ineffective for failing to move for a minor role reduction under § 3B1.2 of the Sentencing Guidelines. First, a reduction for his role in the offense would not have helped him. Because his offense level from the career offender table (34) was greater than the offense level otherwise applicable (32, or 30 with a hypothetical minor role reduction), the offense level from the career offender table was applied, and the role adjustment would not have applied. See U.S. Sentencing Guidelines Manual § 4B1.1(b)(B); United States v. Morales-Diaz, 925 F.2d 535, 540 (1st Cir. 1991). Further, considering the facts of the case regarding Jones's conduct, the equal sentences given to Tavares and Jones, and Judge Gertner's comments at sentencing condemning Jones's actions, it is implausible in the extreme that she would have applied a minor role adjustment had Weinstein requested it. Counsel was not ineffective for failing to advance a futile argument.

Jones also contends that Weinstein was ineffective for failing to argue that whether he was a career offender should have been decided by the jury. However, the First Circuit has "ruled with regularity bordering on the monotonous" that "sentencing-enhancement provisions based upon prior criminal convictions" do not need to be proved to a jury beyond a reasonable doubt. United

States v. Moore, 286 F.3d 47, 51 (1st Cir. 2002); accord United States v. Virden, Crim. Action No. 09-10325-JLT, 2013 WL 4046327, at *9 (D. Mass. Aug. 7, 2013) (quotation omitted); Dennis v. United States, Civ. Action No. 10-12166-GAO, 2012 WL 5875119, at *1 & n.3 (D. Mass. Nov. 19, 2012) (quotation omitted). It was not an error for counsel to decline to take a legal position foreclosed by precedent.

Jones's final claim is that counsel was ineffective for failing to move for a departure under § 5K2.13 for diminished capacity based upon Jones's troubled early childhood. Although Weinstein did not make a formal motion for departure, at sentencing he presented a psychological examination report in support of his request for a below-guidelines sentence. The report described in detail Jones's childhood difficulties. Judge Gertner considered the report and the defendant's background but rejected counsel's argument for a below-guidelines sentence in light of her perception of the seriousness of the crimes.[4] See Tavares, 705 F.3d at 33–34 (noting that "the district court found that the gravity of the offense trumped any weight that might otherwise be given to Mr. Jones's background"). Again, counsel was not ineffective for declining to make a futile argument.

## IV.   Conclusion

For the foregoing reasons, Jones's motion to vacate is DENIED and the petition is DISMISSED.

---

[4] Specifically, Judge Gertner remarked:

> While I have read the report that Mr. Weinstein handed up, there are frankly certain offenses that trump everything. There are certain offenses that are so serious that even if there's an explanation for it in someone's background and history and even if you can draw a straight line from who they were to who they are now, and if you can understand it, there are some offenses that can't be explained, can't be justified. This is one of them.

(Sentencing Tr. 17.)

9

Because he has not "made a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.  
United States District Judge